Bentley et al. vs. Fischer Lumber & Manufacturing Co., Ltd., et al.

No. 12,834.

MRS. JOYCE J. BENTLEY ET AL VS. FISCHER LUMBER AND MANUFACTURING CO., LIMITED, ET AL.

51   451
107   249

SYLLABUS.

1st.  The building of a levee on the land of another without his consent, by which it is claimed his land was made unfit for cultivation, will subject the party constructing the levee to the damages, but he will not be responsible for damages caused by the cutting of the levee by a mob, the law excluding such damages under the rule that the party who commits the wrong cannot be held for what the law deems remote damages.    Sedgwick on Damages, S. 57 *et seq.*   Cooley on Torts, p. 69 ; 4th Ann. 79.

2nd.  Our law seeks to compensate damages resulting from the wrongful act of defendant, but our jurisprudence does not favor the allowance as part of the damages, of the fee of the attorney of the plaintiff in the suit.    35th Ann. 1016 . 36th Ann. 133 ; 39th Ann. 931.

3rd.  There is a limit even to vindictive damages, proportioned as they should be to the nature of the wrong, and with some reference to the actual loss of the injured party.   7th Ann., 447.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*O. B. Sansum* and *Carroll & Carroll* for Plaintiff and Appellant.

*Farrar, Jonas, Kruttschnitt* and *Gurley* for Defendants and Appellees.

Submitted on briefs December 7, 1898.
Opinion handed down February 20, 1899.

The opinion of the court was delivered by
MILLER, J.  The plaintiff appeals from the judgment awarding her

only part of the damages she claims to have sustained by the building of a levee on her land by the defendants.

The defendant, Conrad B. Fischer, the owner of swamp land, found it essential, in order to float the timber cut on his land to the Atchafalaya river, to construct a lock in a bayou by means of which it was expected sufficient water would be accumulated to float the timber. The bayou was on the plaintiff's land, as we find it stated in this brief, but being a natural outlet for the adjacent lands, the police jury of the parish conceived they had the right to grant the defendant the privilege of placing the lock in the bayou, and besides that authority, he obtained plaintiff's consent to the construction of the lock on payment of the amount she claimed for the building of the lock and other privileges in respect to her property, the defendant desired. The lock, however, proved ineffective for his purposes, and to obtain the water sufficient to float his timber, he caused to be built a levee from the lock across the adjacent low or swamp land and this levee which, combined with the lock, proved serviceable in checking the flow of water through the bayou and gave to him, on his swamp land, the requisite water to float his timber to the river. This levee was built across a strip of swamp land belonging to plaintiff; the defendant claims by her consent, given through her husband, and implied as defendant insists, by the privilege she gave for the making of the lock, useless it is claimed, without the levee to accomplish the defendant's purpose. Owing to this levee obstructing the natural flow of the water through the bayou, a portion of plaintiff's land above or north of the levee was flooded, preventing the seasonable replanting for another year, and the damages thereby sustained, form part of the plaintiff's demand in this suit. The plaintiff urges another complaint arising from the cutting of the levee. Obstructing a natural outlet for the lands of others besides plaintiff's, the levee proved a source of discontent to the land owners in the vicinity, and the result was that a number of men assembled and cut the levee, causing the confined water to escape on plaintiff's cultivated lands, below or south of it, destroying her crop, unfitting the land for the production of the full crop it would have yielded but for the precipitation of the water on the land at a time too far advanced in the season to admit of successful replanting, and the plaintiff's alleged loss, in this respect, is also claimed in this suit. Before the mob cut the levee, the defendant had made gaps he deemed sufficient to allow enough water to escape, for

the protection of the lands from overflow. After all these openings had been made in the levee, the plaintiff, apprehending that defendant would rebuild it, enjoined him from doing so, and the expense which she supposes will be requisite to level the space occupied by the levee forms another part of the damages claimed in this suit.

The plaintiff's petition averred that the defendant, C. B. Fischer, and the Fischer Lumber & Manufacturing Company had wrongfully entered upon and built the levee on her land, averred the loss of crops above the levee by stopping the flow of the water from the land and below the levee by the precipitation of the water through the gaps made by the mob. The expense of levelling the space occupied by the levee, including replacing the earth in the pits, was also claimed, and with the punitory damages demanded, made up the four thousand five hundred and thirty-seven dollars sought to be recovered. The answer is substantially the general issue. The lower court awarded plaintiff five hundred and sixty-seven 45-100 dollars. She seeks by this appeal to have that amount increased, and the defendant answering the appeal, demands that the damages given by the lower court be reduced, and that the injunction of plaintiff against rebuilding the levee be dissolved, with damages.

In our view the defendants have shown no consent from the plaintiff to build the levee on her land. The testimony of C. B. Fischer is that the plaintiff's husband gave his consent, but his testimony is to the contrary. The whole testimony impresses us that the lock in the bayou without the levee, would not have arrested or checked the flow of water to that degree required to accumulate the water on defendant's land so as to enable him to float his timber, but we cannot infer that because plaintiff gave the defendant the privilege of the lock, she thereby assented to the levee on her land. The defendant, C. B. Fischer, must respond for the damages the plaintiff sustained arising from the building of that levee.

We first direct our attention to the alleged loss on the crop above or north of the levee, caused by the water resting for say three months on the plaintiff's field, because of the obstruction to the natural flow interposed by the levee. The witnesses for the plaintiff fix this cultivated area covered by the water at twenty-five acres. On the other hand, there is the testimony of two witnesses, surveyors, who carefully surveyed the land, guided by the water stains on the trees in the adjacent swamps, who concur in fixing the cultivated area overflowed

at 13 71-100 acres. It is true, this survey was made about a year after the water subsided. It is claimed that water stains are not sufficiently distinct to be reliable guides, and at best, do not indicate the surface of the water or height the water attains. We find the stress of the testimony to be that the discrepancy between the stain and the height of the water, if any, is inconsiderable, and that a difference in levels of two inches would not change the area surveyed more than one and 2-10 acres. The testimony of these surveyors is to the effect that the water stains were distinct, agreed with the bench marks of the State engineers, and confirmed, they state, by the information derived by them from the residents. Leaving out of view the statement of the residents, there remains the testimony of the surveyor, testifying on the basis afforded by the distinct water stains. We think equal, if not greater, effect is due to their testimony than that of witnesses who gave the area in a round number, not as far as we can ascertain, based on any survey. The lower court on this issue adopted the area given by the surveyor, 13.71 acres, and we do not find the basis to disturb that finding. On this land a crop was made, the witnesses call a half crop. It is claimed that a full crop would have been a bale to the acre. The lower court allowed for the loss of the half crop, assumed the weight of the bale at five hundred pounds, and that six cents per pound would have been obtained, that the profit of plaintiff would have been ten dollars per acre, and hence plaintiff's loss was five dollars per acre. A theory that rests on the assumption of ten dollars per acre clear profit to the cotton planter, in the light of the record, strikes us as liberal, not to qualify it as excessive. Thus deduced, the plaintiff's loss, five dollars per acre on her cultivated lands, was sixty-eight 65-100 dollars. We find no warrant to increase it, even by the usual value of cotton seed yielded by that acreage.

We gather from the record that there was a part of the land flooded above the levee on which the trees were deadened, covered with underbrush, not enclosed, and never in cultivation. The plaintiff claims that she should be allowed for the flooding of the "deadened lands," as they are called, never cultivated, nor enclosed, nor fenced or ditched, a loss of twelve dollars per acre, making thirteen hundred and eighty dollars, the largest item of the demand, except that of twenty-seven hundred dollars punitory damages, including attorney's fees. We have testimony that the land could have been rented, that if rented it would have yielded a net profit of ten dollars per acre,

which plaintiff claims should be increased two dollars an acre for the yield of the cotton seed. The testimony is, of course, entirely hypothical. It consists of the opinions of the witnesses enforced by the testimony of a witness to the effect that he desired to rent the lands, visited the locality for that purpose, but would not rent because the lands were wet from the standing water. We find a comment on this kind of testimony as a basis for damages in the case of Grant vs. McDonogh, 7th Ann. 448. Opposed to the view that a man really desirous of renting the lands would have been deterred by the effect of the water that had stood on the land, it is in evidence that cotton can be planted and good crops made, after the date when it is proved the water receded from the land. While the plaintiff should be fully compensated for her loss, we cannot find the basis to allow damages on the theory that land in the condition exhibited by the testimony, could have been cultivated, and if cultivated, would have yielded a profit to the owner of twelve dollars per acre. In the opinion of the lower court this part of the plaintiff's case was not supported. Unless we can award damages on a basis purely hypothetical, and in our opinion, not possible; we must reject this part of the demand.

The claim for damages in respect to the land below or south of the levee, encounters the difficulty that the inundation causing the alleged loss of crops, was the result of the act of the mob cutting the levee. In this view it was not the levee that caused the damage, for while the levee stood, there could be no flooding of the land. Can the defendants be held for the violence of the mob that precipitated the water on the land? The law is clear that in suits of this character, in computing actual damages, the proximate cause is that which the law regards. When the law awards other damages than those attributable to the proximate cause, they are given as punitory. Sedwick on Damages, S. 58 et seq. 2nd Greenleaf S. 256. We have given attention to the line of authority cited by plaintiff to connect the act of the defendant in building the levee with the subsequent violence of the mob cutting it. The "Squib" case is found in the text books to illustrate the rule that distinguishes the remote from the proximate cause. The squib is thrown in the market house, lights on one stall, then on another, from both of which it is thrown, and finally the squib thus thrown from the last stall enters the plaintiff's eye and destroys his sight. The court attributed the plaintiff's injury to the party who first threw the squib; in other words, his act was deemed the proxi-

mate cause of the loss. The text books call attention to the concurrence to the full extent of the decision of but one of the four judges, and to the dissent of Justice Blackstone. Sedgwick, p. 58, note at foot. This type of cases cited in support of plaintiff's demand, does not, in our view, support it. The hurling of the squib in the case cited, the wrongful act, is the effective and direct cause of the loss of the plaintiff's eye. In the case before us, the levee built by defendant was harmless in respect to plaintiff's loss. The act of the mob was the direct cause of that loss. Our law and the general law in this class of cases, restricts damages, unless given by way of punishment, to the loss arising from the proximate cause. Gaulden vs. McPhaul, 4th Ann. 79; Grant vs. McDonogh, 7th Ann. 448. With the most patient consideration on this part of the case, we reach the conclusion of our learned brother of the district court that the plaintiff's demand in this respect, cannot be sustained.

The lower court allowed three hundred and forty-eight dollars for levelling the space occupied by the levee. The allowance is based on the number of cubic yards the levee contained, and supposes that this levee, built in the swamp, will have to be taken down in all its course and the earth replaced in the pits from which it was taken. We think there is reason in defendant's argument that a less expensive method, whether by the gaps already made, or other modes, would avert any danger from the obstruction of the levee to the flow of the water. The lower court, in dealing with this question, has adopted the medium of the cost of taking down the levee exhibited in the testimony. This allowance is three hundred and forty-eight dollars, and plaintiff claims it should have been three hundred and sixty dollars. We do not think the allowance should be increased.

The plaintiff claims a large measure of punitory damages, including one thousand, two hundred and fifty dollars attorney's fees. The case discloses an encroachment by defendants on the plaintiff's property and an injunction to protect her rights. The levee was built on a strip of swamp land. The injunction to prevent its rebuilding was promptly issued and enforced by the punishment of the defendants for its violation. In all this we recognize, as did the lower court, the basis for exemplary damages. Our jurisprudence has not favored the allowance of attorney's fees as part of the damages to be awarded for injuries to persons or property. Our courts, in cases like this, have aimed to compel full restitution to the extent possible of accomplish-

ment, for the plaintiff's injuries, but the policy and spirit of our jurisprudence has not been to introduce the fee of the plaintiff's attorney as an element of the damages to be given. Eatman vs. Railway Co., 35th Ann. 1016; Roos vs. Goldman, 36th Ann. 133; Fox vs. Jones, 39th Ann. 931. Our attention has been called to one case in which such fees were allowed. The case was exceptional, that of the dispossession of the property of the plaintiff under the threat of taking his life, if he resisted. Cooper vs. Cappel, 29th Ann. 213. This case presents no such features. The defendant Fischer testifies he built the levee, believing he had the right, and he testifies further, that plaintiff's husband consented. The impression we derive from the testimony is, he assumed the right to build the levee on the idea that plaintiff would not object, and it is in proof before this suit was brought he offered to pay the damages caused by the obstructed water. His defense is directed against the measure of damages claimed by plaintiff, and the absence of any liability for the acts of the mob. The case, therefore, in our opinion, does not exhibit the features of violence and other aggravated features conspicuous in the Cappel case, and in other cases for damages that have come before this court. We do not feel at liberty to establish in this case the precedent of attorney's fees as damages. On the question of the amount to be given as exemplary damages, we must be guided to some extent by the plaintiff's actual loss. Rejecting her demand for damages done by the mob, and the claim that land never cultivated or fit for cultivation except that the trees were deadened, would have been rented and cultivated in cotton at a profit of ten dollars per acre, a little over five hundred dollars, and that, too, on the most liberal mode of computation, covers all of plaintiff's actual damages, strongly contrasted with the amount of punitory damages claimed, swelling the entire demand up to over five thousand dollars, as we find it figured in the brief. Our courts have time and again held that even punitory damages have a limit, and must bear some proportion to the real injury. Grant vs. McDonogh, 7th Ann. p. 447.

Campbell vs. Short, 35th Ann. 465, and others of the same type might be arrayed. With the most patient consideration we can find no basis to increase the amount allowed by the lower court as exemplary damages.

We think the levee was built in the interest of the Fischer Lumber and Manufacturing Company and impliedly with their consent. We

will not disturb the judgment holding the company and C. B. Fischer liable. We find a reference in the briefs to the expenses of plaintiff for maps and documentary evidence constituting necessary proof in the cause. For all such expenses that are essential to make out plaintiff's case the power is in the lower court to tax such expenses as costs. C. P. Art. 552 and amendment.

We regret to find in one of the briefs for plaintiff, language to the effect that the issue of this litigation is awaited with interest by "the people," and that if the judgment does not grant redress "the people" will resort to violence. By "redress" we can only understand the measure of relief contended for by the plaintiffs. The judges of this court, and presumably of all courts, perform their duties under a deep sense of responsibility, and with an earnest desire to do justice to the plaintiff seeking relief, and to the defendant, equally entitled to protection if the demand against him is exaggerated or unfounded. Our learned brother of the District Court devoted great care to this case. We have scanned this record, and given the closest attention to the argument and to the law we conceive applicable. We concur in the conclusion of the lower court. The meaning conveyed by the part of the brief under discussion, is that the courts must adopt the standard of rights and measure of relief claimed by the litigant and presented by his counsel; or provoke that violence which the brief implies, if it does not expressly state, will be the necessary and appropriate redress to which the people will resort. There is neither persuasion nor propriety in these lines put in the brief. The courts of the country would forfeit the public confidence if the least influence were accorded to the method adopted in this brief, of enforcing the plaintiff's demand; and we would fail in our duty if we passed over the brief without suitable expression. The forbearance of further comment that might well be deemed appropriate on the language of this brief, is perhaps as expressive as that more explicit condemnation we do not care to put in words.

It is ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.