712 So.2d 88 (1998)
Earl J. ADAMS, Jr., et al.
v.
J.E. MERIT CONSTRUCTION, INC., et al.
No. 97-CC-2005.
Supreme Court of Louisiana.
May 19, 1998.
*89 Henri Wolbrette, III, James Michael Garner, John Thomas Balhoff, II, William Jeffers Furnish, Jr., Martha Young Curtis, New Orleans, for Applicant.
Charles Joseph Ballay, Adrian Anthony Colon, Jr., Ballay & Braud, Belle Chasse, Stephen Barnett Murray, Charles R. Ward, Jr., Robert John Diliberto, New Orleans, Sherman Gene Fendler, Mark Daniel Latham, Liskow & Lewis, New Orleans, Lynn M. Luker, Robin Bryan Cheatham, Lisa Newman Sibal, Adams & Reese, New Orleans, for Respondent.
VICTORY, Justice.[*]
We granted this writ to determine whether the exclusivity provision of the Workers' Compensation Act, as it existed in 1994, precludes employees from recovering punitive damages from their employer under former Louisiana Civil Code article 2315.3 for exposure to hazardous or toxic substances in the course of their employment. We reverse the lower courts' rulings and hold that the exclusivity provision bars such a claim. In so doing, we overrule this Court's previous decision in Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94), 645 So.2d 604.

FACTS AND PROCEDURAL HISTORY
On August 12, 1996, plaintiffs, employees of J.E. Merit Construction, Inc. ("JE Merit"), filed a petition seeking punitive damages under Louisiana Civil Code article 2315.3 resulting from alleged exposure to asbestos while working at the BP Oil Refinery in Alliance, Louisiana, from September 1993 through April 1994. The defendants are JE Merit, Basic Industries, Inc. ("Basic") and BP Exploration & Oil, Inc. ("BP") and three individuals employed by BP or JE Merit. JE Merit and Basic are contractors who allegedly worked at the BP refinery during plaintiffs' alleged exposure to asbestos.
In connection with their suit for punitive damages, plaintiffs propounded interrogatories to all defendants, requesting gross annual earnings, net annual earnings or profits, and other financial information. JE Merit filed a Motion for Protective Order and Motion for Partial Summary Judgment claiming that plaintiffs' punitive damages claims under Article 2315.3 were precluded by the Louisiana Workers' Compensation Act and that because plaintiffs had no punitive damages claims, the financial information was not discoverable. Relying on Billiot, the trial court denied JE Merit's motions. The Fourth Circuit denied JE Merit's writ application. Adams v. J.E. Merit Construction, Inc., 97-C-1208 (La.App. 4th Cir. 6/27/97). We granted a writ to reconsider Billiot. Adams v. J.E. Merit Construction, Inc., 97-CC-2005 (La.11/14/97), 703 So.2d 1279.

DISCUSSION
Prior to its amendment in 1995, the exclusivity provision of the Workers' Compensation Act, La. R.S. 23:1032 A, provided as follows:
Section 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
La. R.S. 23:1032(A)(1)(a) (prior to 1995 amendment).[1]
*90 Prior to its repeal in 1995, La. Civil Code article 2315.3 provided in pertinent part:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
La.C.C. art. 2315.3 (repealed by Acts 1996, No. 2).
In Billiot, a decision one commentator has characterized as "disturbing"[2] and "startling,"[3] a four-justice majority of the Court held that former La. R.S. 23:1032(A)(1)(a) did not bar a worker from recovering punitive damages from his employer under former Article 2315.3. The Court based its holding on a finding that in 1914, when the Workers' Compensation Act was first enacted, Louisiana law did not recognize punitive damages; therefore, the Legislature did not intend to include punitive damages in the phrase "shall be exclusive of all other rights and remedies" because punitive damages were not a right or remedy then available under the law. 645 So.2d at 608. Expanding on this theme, the Court further held that the remedy exclusion rule of 1914 was not tacitly amended to bar an employee's rights to punitive damages under Article 2315.3 by any contemporaneous or subsequent reenactments of La. R.S. 23:1032, essentially freezing in time the term "all other rights and remedies." In addition, the Billiot court held that in light of the history and policy underlying the Workers' Compensation Act to preserve the general tort rights of an injured worker in the absence of explicit statutory language limiting or excluding such rights, punitive damages were not barred because La. R.S. 23:1032 did not contain such explicit language. Lastly, the Billiot court held that the language of Article 2315.3 did not exclude an employee's recovery of punitive damages, even though the employee would not be entitled to general damages for the same injury. Id. at 608-612.
We overrule Billiot, not only because its holding is contrary to the express language of La. R.S. 23:1032 A that "[t]he rights and remedies herein granted ... shall be exclusive of all other rights and remedies," but also because the underlying reasoning supporting its holding is erroneous. The Billiot court summarized its logic as follows:
We conclude that the remedy exclusion rule does not apply in the present case because the rule excludes only the employee's right to compensatory damages that was provided by law at the time of the enactment of the workers' compensation act. The remedy exclusion rule does not abrogate a right to a punitive award because the law of this state did not provide for such a right when the legislature enacted the rule; therefore it cannot be argued that the legislature implicitly intended to continue such an abrogation when it enacted the hazardous or toxic substance punitive damage action in 1984. Further, under established principles of constitutional law, the legislature by its enactment of the workers' compensation act's remedy exclusion rule could not prevent itself from creating a future punitive damage remedy for employees against employers. Finally, the legislature has not altered the original wording or the substantive effect of the remedy exclusion rule since its first enactment. Consequently, that rule operates to bar only the employee's right to compensatory damages and not the employee's right to a punitive award.
Id. at 608. However, a review of Louisiana jurisprudence shows that the basic premise underlying this reasoning is erroneous.
The Billiot court's main error is contained in the following:

*91 At the time of the enactment of the workers' compensation law in 1914, no personal injury of any kind gave rise to a substantive legal right to punitive or exemplary damages or a remedy or means for carrying it into effect. The sources of law in Louisiana are legislation and custom; and, as in all codified systems, legislation is the superior source. La. Civ.Code art. 1 (1988); La. Civ.Code art. 1 & 3 (1870). See also La. Civ.Code art. 1, Revision Comments-1987. In a series of decisions beginning as early as 1881, see, Dirmeyer v. O'Hern, 39 La. Ann. 961, 3 So. 132, 134 (1887) (vacated on other grounds), Deslonde v. O'Hern, 39 La. Ann. 14, 1 So. 286 (1887), M.L. Byrne & Co. v. L.H. Gardner & Co., 33 La. Ann. 6 (1881), and culminating with Vincent v. Morgan's Louisiana & T.R. & S.S. Co., 140 La. 1027, 74 So. 541 (1917), this court, interpreting the applicable civil code provisions, made clear that the law of Louisiana did not provide or authorize a right or remedy for the recovery of punitive damages.
Id. at 608-609. To the contrary, a look at these cited cases and many others makes clear that Louisiana courts often awarded punitive damages prior to 1914.
As early as 1836, this Court found that the defendant's "obstinate determination to take justice into his own hands" authorized the jury to "make him pay something in the shape of smart money." Summers v. Baumgard, 9 La. 161, 162 (1836) (see Dirmeyer, supra, recognizing "smart money" as a form of punitive damages). In 1852, this Court recognized a jury's discretion under Civil Code Article 1928 to award a greater amount of damages than actually sustained, but that such "exemplary damages" should bear some proportion to the real damage sustained. Grant v. McDonogh, 7 La. Ann. 447 (1852). In a personal injury case in 1855, this Court held that "vindictive" or "exemplary" damages were awardable to punish; however, such damages could not be awarded in that case because the suit was brought by the father of the injured party, not the injured party himself. Black v. Carrollton Railroad Co., 10 La. Ann. 33 (1855), overruled by Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990) (holding that third parties may recover damages for mental anguish in certain cases, and, notably for our purposes, recognizing that Black had characterized such damages as punitive damages). Likewise, in a case involving a similar personal injury, this Court cited Black for the proposition that "vindictive" damages were authorized by Civil Code Article 1928 and found that $1,000 in such damages were not excessive. Varillat v. New Orleans and Carrollton Railroad Co., 10 La. Ann. 88 (1855). Again, in a case involving malicious arrest and prosecution, this Court awarded $1,000 and held that, in the absence of evidence of particular damages, the jury was not obligated to find nominal damages only but that "exemplary damages" should be commensurate to the nature of the offense. Burkett v. Lanata, 15 La. Ann. 337 (1860). In Edwards v. Ricks, this Court found as follows: "the evidence disclose[d] a most cruel, unmanly, and wanton outrage, perpetrated by the deceased, Varnado, and Ricks, upon the defenseless wife and children of plaintiff who were ejected at night from their home, ... So far as Ricks is concerned, we shall not disturb the verdict of the jury, who awarded $5,000 damages. But we have seen that the widow and heirs of Varnado are not liable to the infliction of these exemplary and punitive damages, but only for civil reparation." Edwards v. Ricks, 30 La. Ann. 926, 929 (1878). In a property damage case, this Court held that punitive damages were justified but, significantly, recognized that "[o]ur courts have time and again held that even punitory damages have a limit, and must bear some proportion to the real injury." Bentley v. Fischer Lumber & Manufacturing Co., 51 La. Ann. 451, 457, 25 So. 262, 264 (1899). Lastly, this Court discussed punitive damages as late as 1903 in Patterson v. New Orleans & C.R.R., Light & Power Co., 110 La. 797, 34 So. 782 (1903). In Patterson, a passenger sued a streetcar company for injuries he sustained due to the negligent operation of the streetcar by the intoxicated streetcar operator. The trial court awarded damages to warn the company against such future conduct and the company argued on appeal that these punitive damages could not be awarded. This Court affirmed the award, *92 finding that it was an appropriate compensatory award, but noting that the case was not appropriate for punitive damages because the damages would not be imposed against the actual wrongdoer, but only vicariously against his employer.
The above cases clearly show that punitive damages were recognized and awarded by this Court as early as 1836. The four cases cited by the Billiot court do not hold otherwise. In the case of Byrne v. Gardner, supra, this Court found that the defendant did not institute legal proceedings against the plaintiff maliciously. 33 La. Ann. at 7. This Court found that in the absence of malice, the plaintiff was entitled only to damages actually sustained. Accordingly, this Court found that $5,000 awarded was excessive and reduced the award to $750, which it found to be "fair compensation for the damages sustained." Id. at 9. There is no indication that the court would not have awarded punitive damages had it found that the defendant acted with malice. Nor can this holding be interpreted to mean that the damages awarded by the courts and called punitive damages were in reality elements of the "damages actually sustained."
However, in Deslonde, supra, while this Court found that a landlord acted with malice in evicting the plaintiff and that the trial court erred in restricting plaintiff's damages to the actual loss and expense sustained, this Court awarded an additional sum of $250 for plaintiff's trouble, mental anxiety and distress, which it characterized as "actual damage" under Byrne v. Gardner. 1 So. 286, 289. Punitive damages were never discussed.
On original hearing in Dirmeyer, this Court discussed a confusion between the differences between actual and exemplary or punitory damages with actual damages being limited to a pecuniary loss and exemplary or punitory damages being often mistakenly considered as all damages beyond that. 3 So. 132, 134. In reality, the Dirmeyer court stated that punitive damages were instead a punishment and that "[i]t is a principle that has been borrowed from the common law, and, though tacitly and sometimes expressly recognized in our decisions, it is really an exotic in our system." Id. Further, this Court stated that "[h]owever this may be, the present court, in repeated decisions, has recognized this kind of damage as actual damage, and these decisions are supported by eminent elementary writers on the subject." Id. The only "repeated decisions" cited for this proposition were Byrne and Deslonde. In any event, on rehearing, the decision on original hearing was annulled and set aside. Id., 3 So. at 136.
We recognize that the last case cited by Billiot, Vincent v. Morgan's La. & T.R. & S.S. Co., supra, contained an extensive review of the law and ultimately held that the law adequately allowed for the recovery of damages which would compensate a plaintiff, such that punitive damages were not recoverable. However, the Vincent case was decided in 1917, three years after the Workers' Compensation Act, including the exclusivity provision, was enacted in 1914. Hence, the Billiot court erred in relying primarily on Vincent for the proposition that in 1914 the legislature could not have intended to include punitive damages in the exclusivity provision of the Workers' Compensation Act as Vincent was not even available for the legislator's review in 1914. At the very least, the legislators knew in 1914 that the Louisiana Supreme Court had affirmed punitive damage awards several times, although there may have been some confusion over whether such awards were proper. In such case, and especially in light of such confusion, the Legislature would not have used such broad and clear language in drafting the exclusivity provision if it thought that punitive damages would not be included in the provision.
Thus, contrary to the holding in Billiot, we find that in 1914, when the Workers' Compensation Act was first enacted, punitive damages had often been recognized as a right or remedy by Louisiana courts. Consequently, because of the broad and clear wording of the exclusivity provision, there is no reason to believe the Legislature intended to exclude punitive damages from the exclusivity provision in 1914.
Even if we were to accept the erroneous Billiot finding that punitive damages were not recognized in 1914, we would still find *93 that "La. R.S. 23:1032A's provision that `[t]he rights and remedies herein granted to an employee ... shall be exclusive of all other rights and remedies of such employee' means what it saysall other rights and remedies, whether existing at the time of adoption of the Workers' Compensation law or enacted thereafter, are excluded from the array of recoverable items against the employer." 645 So.2d 604, 618 (Lemmon, J., concurring). To hold that the meaning of terms in a statute are forever "frozen in time" if the statute is subsequently amended but with no "substantive" change has no basis in law. 645 So.2d 604, 619 (Hall, J., dissenting). At the time of the alleged asbestos exposure in this case, the Legislature had amended La. R.S. 23:1032 in 1918, 1976, and 1989. At least in 1989, they were well aware that punitive damages were an available remedy to an injured tort victim in some cases, yet they made no change to the phrase "the rights and remedies granted to an employee... on account of a personal injury... shall be exclusive of all other rights and remedies." At that point in time, if the Legislature had meant to exclude punitive damages from the exclusivity provision, they would have simply done so specifically. Likewise, when the Legislature enacted and amended Article 2315.3 in 1984 and 1990, had they meant to provide employees with coverage under that article, in light of the broad language of the exclusivity provision, they would have had to specifically provide for this in Article 2315.3. For example, Article 2315.3 could have read "Notwithstanding La. Rev.Stat. 23:1032, in addition to general and special damages, exemplary damages may be awarded ..." Surely, they would not have relied on the same reasoning as the Billiot court that although punitive damages were clearly awardable in 1989, since they were not recognized in 1914 and therefore not included in the exclusivity provision at that time, they would be forever excluded from the exclusivity provision. Further, the fact that in 1995 the Legislature amended La. R.S. 23:1032 A to specifically include punitive damages clearly does not mean that it considered that punitive damages were not included prior to 1995. The Amendment was merely a reaction to the Court's unexpected ruling in Billiot. Without such an amendment, the interpretation in Billiot would have remained the law.
Furthermore, contrary to the holding in Billiot, interpreting the phrase "all rights and remedies" to include punitive damages is consistent with the history and policy underlying the Workers' Compensation Act. The majority in Billiot found that "the history and policy of the workers' compensation act create a presumption on the side of preserving the general tort of delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." 645 So.2d at 610-611 (citing Roberts v. Sewerage and Water Bd. of New Orleans, 634 So.2d 341, 346 (La.1994)). Nonetheless, there is no absence of explicit statutory language limiting or excluding such rights. The phrase "all other rights and remedies of such employee... against his employer ... for such injury" explicitly includes all rights and remedies, which includes punitive and compensatory damages.[4]
As stated by former Justice Hall in his dissent in Billiot:
Leaving the tort remedy of punitive damages outside of the exclusivity of the worker's compensation act goes counter to the scheme of the act and introduces issues of tort liability between employer and employee with all attendant shortcomings and problems (unpredictability, litigation costs, proof of wantonness or recklessness, available defenses) which were, presumably, done away with long ago when the worker's compensation law was adopted.
645 So.2d 604, 619-620 (Hall, J., dissenting).
Finally, contrary to the holding in Billiot, an employee cannot recover punitive damages from his employer under La. C.C. art. 2315.3 because the first phrase of Article 2315.3 which provides that "[i]n addition to general and special damages, punitive damages may be awarded ...," implies that punitive damages are only available to those *94 persons who are eligible to recover general and special damages. Because La. R.S. 23:1032 clearly prohibits an employee from recovering general and special damages from his employer, the employer cannot be liable for punitive damages under Article 2315.3.[5]

CONCLUSION
For the reasons given, we overrule Billiot and hold that the exclusivity provision of La. R.S. 23:1032 A, prior to its amendment in 1995, providing that "[t]he rights and remedies herein granted to an employee ... on account of an injury ... shall be exclusive of all other rights and remedies," precluded an employee from seeking punitive damages from his employer under former Civil Code Article 2315.3 as a result of an employmentrelated injury or compensable disease.[6]

DECREE
For the reasons stated herein, the judgments of the trial court and court of appeal denying JE Merit's Motion for Partial Summary Judgment are reversed and judgment is entered granting JE Merit's Motion for Partial Summary Judgment. JE Merit's Motion for Protective Order is remanded to the trial court for reconsideration in light of this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs in part, dissents in part and assigns reasons.
LEMMON, J., concurs and assigns reasons.
KNOLL, J., concurs with reasons.
JOHNSON, J., concurs in result.
CALOGERO, Chief Justice, concurring in part, dissenting in part.
The Billiot case, which held that the exclusivity provision in LSA-RS 23:1032(A) did not include an employee's claim against his employer for punitive damages, was decided by this Court in a 5-2 decision in 1994. The following year, the Legislature, almost certainly in response to this Court's decision in Billiot, amended the statute to provide that an employee's claim for punitive damages does fall within the exclusivity provision of the Worker's Compensation Act, thereby settling the issue for all future cases. Under these circumstances, it was my view that the issue should not be revisited, as the Billiot decision would affect only the finite number of cases that were pending prior to the 1995 amendment of LSA-RS 23:1032(A). This was also the view of the majority on three successive panels, wherein this Court denied writs on the same issue, until this writ was granted by a another panel. However, that being said, the case is now before this Court after briefs and oral arguments, and the merits must be decided.
The central premise behind the Billiot holding (that the exclusivity provision in LSA-RS 23:1032(A) did not include an employee's claim against his employer for punitive damages) was as follows: Prior to the 1914 enactment of the first Worker's Compensation Act, the recovery of punitive damages was not "authorized" in Louisiana. Therefore, the Legislature could not have intended to bar an employee's recovery of punitive damages against an employer when it (the Legislature) declared "the rights and remedies [contained in the Worker's Compensation Act] granted to an employee on account of a personal injury for which he is entitled to compensation under this act [to be] exclusive of all other rights and remedies of such employee...." Act 20 of 1914, § 34.
Although the Billiot court was probably correct in its conclusion that the recovery of punitive damages was not "authorized" in Louisiana prior to 1914, there did exist, prior *95 to that time, a handful of cases that did discuss and, in some instances, purport to award "smart money," "vindictive damages," or "punitory damages" above and beyond the actual amount of damages sustained. However, as was recognized in Vincent v. Morgan's Louisiana & T.R. & S.S. Co., 140 La. 1027, 74 So. 541 (1917), which was cited and relied upon by the Billiot court, many of the discussions of punitive damages in these earlier cases
arose in dicta or out of a mistaken belief among members of the bench and bar that moral damages, damages repairing injuries to the mind or feelings, and damages insusceptible of assessment by direct testimony [were] punitive damages, when in reality they are compensatory damages, arising from the mandate of full reparation under Article 2315 and the grant of broad discretion to the jury in assessing damages under Article 1934.
Billiot v. B.P. Oil, 93-1118 (La.9/29/94), 645 So.2d 604, 609 (summarizing the findings in Vincent v. Morgan's Louisiana & T.R. & S.S. Co., 140 La. 1027, 74 So. 541 (1917)). Thus, it is probably more accurate to state that prior to this Court's conclusive pronouncement in 1917 in the Vincent case that punitive damages were not recoverable under Louisiana law, there existed a state of confusion in the jurisprudence as to what punitive damages were, whether they could be recovered, and, if so, under what circumstances.
It was against this jurisprudential backdrop that the Legislature in 1914 declared the Worker's Compensation Act to be the sole source of recovery by an employee against an employer, "exclusive of all other rights and remedies of such employee." Act 20 of 1914, § 34 (emphasis added). Given the confusion in the jurisprudence prior to 1917 as to the availability of punitive damages, this Court cannot now concludeand should not have concluded in Billiotthat the Legislature was oblivious to the existence and possibility of recovery of punitive damages when it enacted the first Worker's Compensation Act in 1914 and declared the Act to be "exclusive of all other rights and remedies." These reasons prompt me to conclude that the majority in Billiot erred in concluding that the exclusivity provision in LSA-RS 23:1032(A) did not include an employee's claim against his employer for punitive damages. I, therefore, concur in this facet of the case before us.
I also concur to point out more explicitly than does the majority that the plaintiffs, on remand, still have the opportunity to establish that the requested financial information remains relevant to their surviving claims. Plaintiffs have referred to claims sounding in intentional tort in brief and have cited, "chapter and verse," allegations of intentional tortious conduct on the part of defendants in their pleadings. In oral arguments, plaintiffs also raised the possibility of so-called "crossclaims" where some plaintiffs who are employees of one defendant could seek damages from the other two defendants. The plaintiffs in the instant suit are a group comprised of employees of one or more of the defendants, J.E. Merit, Basic Industries, Inc., and BP Exploration & Oil, Inc. Plaintiffs, who have sued all three defendants jointly, aver that, if the statutory employer defense is unavailable to one or two defendants of the three, the worker's compensation bar to a tort claim would not apply to suits by plaintiffs who are employees of one employerdefendant against the other two defendants. Thus, upon remand, the district court should review the Motion for Protective Order in light of these remaining tort claims.
On the other hand, I dissent from the part of the majority opinion that grants defendants' motion for partial summary judgment, thereby precluding plaintiffs' punitive damages claims for all purposes under Civil Code article 2315.3. While I concede that plaintiffs are not entitled to recover such damages for claims based in negligence against their employer, I note that plaintiffs have, in brief and in their pleadings, made allegations of intentional tortious conduct on the part of the defendants. Because LSA-RS 23:1032(B) expressly states that the exclusivity provision found in LSA-RS 23:1032(A) does not apply to claims resulting from an intentional act, if plaintiffs can prove at trial that their employer has committed an intentional tort against them, then plaintiffs would be entitled to *96 compensatory damages under Civil Code article 2315. Further, because plaintiffs' claims arose prior to the repeal of Civil Code article 2315.3, plaintiffs may well be entitled to recover punitive damages under 2315.3 for a claim based in intentional tort, provided that plaintiffs can prove the elements thereof.
Before its repeal, Civil Code article 2315.3 read as follows:
In addition to general and special damages, exemplary damages may be awarded if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances shall not include electricity.
Certainly, an employer who has intentionally subjected his employees to the handling of hazardous or toxic substances without regard for their safety, as plaintiffs allege, has acted in a "wanton or reckless" manner. Thus, if plaintiffs can prove their allegations of intentional tort, in my view they would be entitled to punitive damages.
Moreover, even if plaintiffs were not able to prove an intentional tort, plaintiffs have, as noted above, raised the possibility of "cross-claims" where plaintiffs who are employees of one defendant could seek damages from the other two defendants, assuming the unavailability of the statutory employer defense to the latter defendants. If these claims were proven and if plaintiffs could further prove that these defendants acted with "wanton or reckless disregard for public safety," then, again, plaintiffs would be entitled to recover punitive damages under article 2315.3. Thus, in my view, it is error for the majority to foreclose any possibility of plaintiffs' recovering punitive damages under article 2315.3 at this early stage of the proceedings by granting the motion for partial summary judgment on this issue.[1]
For the reasons given above, I respectfully concur in part and dissent in part.
LEMMON, Justice, concurring.
I concur in the judgment. However, I note it was imprudent policy (and contrary to the guidelines in the court rules) to grant certiorari in this "lame duck" case. This court, to my knowledge, has never changed a precedent immediately after the Legislature addressed the issue and made a legislative revision that was prospective only. It was unwise to bring this case up to make such a change in precedent, especially during this temporary period when there is a different seven-justice panel on each case.
KNOLL, Justice, concurring.
I agree with the majority's reversal of the lower courts and the decision to overrule Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94), 645 So.2d 604. I concur to emphasize the exclusivity of the remedies available to workers and to underscore the derivative nature of La.Civ.Code art. 2315.3 (repealed by Acts 1996, No. 2). Billiot was erroneous as a matter of law in its resolution of both issues.
The [worker's compensation] act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families.
* * * * * *
In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees *97 were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability. Atchison v. May, 201 La. 1003, 1012-13, 10 So.2d 785, 788 (1942). (Emphasis added).
As an integral part of the compensation scheme, La.R.S. 23:1032(A)(1)(a) provides, in pertinent part, that the "rights and remedies granted to an employee on account of an injury ... for which he is entitled to compensation under this chapter ... shall be exclusive of all other rights and remedies of such employee ... against his employer ... for said injury...." It is well established that when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and "no further interpretation may be made in search of the intent of the legislature." La. Civ.Code art. 9. Instead of simply applying La.R.S. 23:1032(A)(1)(a) as written, Billiot needlessly ventured into the question of interpretation. In deciding to chip away at exclusivity, the Billiot decision improvidently undermined an integral part of the worker's compensation compromise, and opened the way for further erosion of the principles on which compensation are based.
I likewise write to amplify the majority's holding herein that finds that punitive damages are derivative of general and special damages. La.Civ.Code art. 2315.3 (repealed by Acts 1996, No. 2) provides, in pertinent part, that "[i]n addition to general and special damages, punitive damages may be awarded...." From the clear wording of this statute, it is evident that punitive damages under La.Civ.Code art. 2315.3 do not come into existence until someone is liable for general or special damages. Since by statute, La.R.S. 23:1032, an employer is not liable for general and special damages, it cannot be liable for punitive damages under La.Civ.Code art. 2315.3.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] In 1995, La. R.S. 23:1032 was amended to read as follows:

A.(1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
[2] H. Alston Johnson, Developments in the Law 1993-1994: A Faculty Symposium Workers' Compensation, 55 La. L.Rev. 665, 674 (1995).
[3] H. Alston Johnson, Louisiana Civil Law Treatise: Workers' Compensation Law and Practice, Vol. 14, Sec. 366 (3 rd Ed.1994 & Supp.).
[4] Under the Billiot court's reasoning, compensatory damages would also be excluded, as the exclusivity provision does not explicitly mention the term "compensatory damages."
[5] Our holding today does not address whether plaintiffs, if successful in proving an intentional act under La. R.S. 23:1032, would then be eligible to recover punitive damages under former Article 2315.3.
[6] Because we overrule Billiot, we need not discuss defendants' argument, and the trial court's holding, that because the Legislature in amending La. R.S. 23:1032 A in 1995 expressly stated that "[t]he provisions of this Act shall be applied prospectively only," the Legislature believed Billiot to be good law prior to 1995. Acts 1995, No. 432, § 2. The prospective application of Act 432 is irrelevant to whether Billiot was a correct interpretation of pre-1995 law.
[1] I am aware of footnote 5 in the majority opinion, the inclusion of which was prompted by my partial dissent. However, it may well be that the footnote alone is insufficient to preserve plaintiffs' claims for punitive damages where the worker's compensation bar would not apply, as defendants' motion for partial summary judgment sought a broad determination that plaintiffs were not entitled to damages under Civil Code article 2315.3.