818 So.2d 892 (2002)
Thomas Wayne YOUNG and Randy Joseph Sanchez
v.
CITY OF PLAQUEMINE, Comeaux Brothers Contractors, Inc, and Gary Hebert, Jr.
No. 2001 CA 0063.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*893 Jack Patrick Harris, Baton Rouge, for PlaintiffsAppellants Thomas Young and Randy Joseph Sanchez.
Donald R. Smith, Baton Rouge, for Defendant Appellee Edward Earl Comeaux d/b/a Comeaux Brothers Construction, Inc.
Michael A. Patterson, Baton Rouge, for DefendantAppellee Gary J. Hebert d/b/a Hebert & Associates Architects and Planners.
Bradley C. Myers, John F. Jakuback, Lana Davis Crump, Melissa Ann Hemmans, Baton Rouge, for DefendantAppellee The City of Plaquemine.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
FOGG, Judge.
By this appeal, the plaintiffs contest the granting of summary judgment in favor of two defendants and the dismissal of those defendants from their action for damages resulting from lead poisoning. For the following reasons, we affirm in part, reverse in part, and remand.
It is undisputed that, on August 12, 1993, the City of Plaquemine entered into a contract with architect Gary Hebert for the renovation of a building it had recently purchased in Plaquemine, Louisiana, to be used as a police station for the Plaquemine Police Department (Plaquemine Police Station). The contract was publicly bid and subsequently awarded to Edward Earl Comeaux d/b/a Comeaux Brothers Construction (Comeaux Brothers), on November 28, 1994. Comeaux Brothers subcontracted the painting services to Stockton Painting Company, the employer of the plaintiffs, Michael Garvin,[1] Thomas Wayne Young and Randy Joseph Sanchez.
The labor performed by Garvin, Young and Sanchez involved chipping, scrapping and cleaning paint surfaces in the interior of the building, including walls, moldings, doors, windows, windowsills, window casings, door frames, ceilings and baseboards. Garvin, Young and Sanchez worked on the average of seven days a week, ten hours a day, from August 1, 1995 through November of 1995.
On September 16, 1996, the plaintiffs brought this tort action against the City of Plaquemine, Comeaux Brothers, and Gary Hebert, seeking damages for lead poisoning they allegedly contracted as a result of the work they performed on the building.
Comeaux Brothers and Hebert responded with motions for summary judgment, asserting they had no liability for the plaintiffs' alleged injuries. On June 21, 2000, the trial court granted summary judgment in their favor. The plaintiffs *894 appealed that judgment on August 30, 2000.[2]
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. See LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, writs denied, 97-3055, 97-3061, 97-3062, 97-3063 (La.2/13/98), 709 So.2d 753, 754.
In their petition, the plaintiffs alleged that in September, October, and November of 1995 they worked at the Plaquemine Police Station as painters for Stockton removing existing paint that had a high level of lead, an activity that caused them to contract lead poisoning. The plaintiffs alleged they complained to Billy Stockton who asked the Chief of Police for the City of Plaquemine, C.J. Cazes, about the possible danger of lead poisoning. Chief Cazes then asked the architect about the possible danger of lead poisoning. On October 26, 1995, Hebert declared in writing to Chief Cazes that there was no threat of lead poisoning in the new building stating, "We are very experienced in doing renovation work and would never release a building to a client with a remote chance of a health hazard."
They further asserted that, on November 10, 1995, portions of the building were tested by Local Abatement Technologies. With two exceptions, the readings indicated lead was present. The plaintiffs alleged that the presence of lead in the building constituted an unreasonable risk of harm to persons working in the building and to the plaintiffs who were removing the paint from the walls. The plaintiffs stopped working after they learned of the condition of the building, but their symptoms continued.

COMEAUX BROTHERS' LIABILITY
In their petition, the plaintiffs alleged Comeaux Brothers is liable for exemplary damages under LSA-C.C. art. 2315.3[3] as a result of its wanton and reckless disregard for public safety in the handling of lead due to its failure to inspect for and detect the lead-based paint prior to *895 the commencement of the renovation. Comeaux Brothers contends it is protected from liability under this provision as it was the plaintiffs' statutory employer.
The statutory employer defense to tort liability arises from the language of LSA-R.S. 23:1032, read in conjunction with LSA-R.S. 23:1061. These statutory provisions contemplate two distinct bases upon which a principal may avail itself of the statutory employer defense: (1) by contracting with another for the execution of work which is part of the principal's trade, business, or occupation; and (2) by contracting with another to perform all or any part of the work which the principal is contractually obligated to perform. The later situation is commonly referred to as the two contract statutory employment defense and was described by the Louisiana Supreme Court in Berry v. Holston Well Service, Inc., 488 So.2d 934, 936 n. 3 (La. 1986), as follows, "In [the two contract] situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the `sub' to do the whole or a part of the total job contracted by the `general.' Under this contractual relationship, the contract work of the `sub' has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the `general.'" In the present case, Comeaux is clearly the plaintiffs' statutory employer.
Pursuant to LSA-R.S. 23:1032(A),[4] the provisions of the Workers' Compensation Act are the exclusive remedy for employees suffering from work-related injury or illness, unless the injury/illness results from an intentional act. Cf. Adams v. J.E. Merit Construction, Inc., 97-2005 (La.5/19/98), 712 So.2d 88. In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court determined that "intentional act" means either that the employer consciously desired the physical result of the act or that he or she knew that the result was substantially certain to follow from the act, notwithstanding the desire as to the result. In Reeves v. Structural Preservation Sys., 98-1795 (La.3/12/99), 731 So.2d 208, the court observed that, since Bazley, the intentional act exception has been narrowly construed and even gross negligence has been found to not meet the intentional act requirement. With regard to the question of whether an employer knows that the result was substantially certain to follow, the supreme court stated, "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by *896 workers' compensation." Reeves, 731 So.2d at 212. The court further stated:
"`Substantially certain to follow' requires more than a reasonable probability that an injury will occur and `certain' has been defined as to mean `inevitable' or `incapable of failing.'" Jasmin v. HNV Cent. Riverfront Corp., supra[, 642 So.2d 311] at 312. "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the `substantial certainty' requirement." Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La. App. 4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Id. (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La. App. 4 Cir.1991)).
Reeves, 731 So.2d at 213.
In support of its motion for summary judgment, Comeaux Brothers submitted the affidavit of Edward Earl Comeaux, owner and operator of Comeaux Brothers. Therein, he stated that at no time prior to the plaintiffs' allegations of lead exposure did he have "any reason to believe that the building under renovation contained lead based paint." He testified that, when that issue was first raised by Stockton employees, he discussed the matter with the architect, Gary J. Hebert, Jr., who assured him that the building contained no threat of lead poisoning, and authored a letter confirming that the building posed no threat of lead poisoning.
A careful review of the evidence indicates that Comeaux Brothers is correct in asserting that its actions do not rise to the level of intentional tort. Therefore, the trial court properly granted summary judgment in favor of Comeaux Brothers.

HEBERT'S LIABILITY
In their petition, the plaintiffs asserted a cause of action against Hebert under LSA-C.C. art. 2315, alleging he was negligent in failing to inspect for and detect the lead-based paint prior to commencement of construction and renovation, and in representing to the City of Plaquemine that lead was not present in the building notwithstanding substantial evidence to the contrary. The plaintiffs also asserted Hebert was liable for exemplary damages under LSA-C.C. art. 2315.3 as a result of his wanton and reckless disregard for public safety in the handling of lead.
In contesting the trial court's grant of summary judgment in favor of Hebert, the plaintiffs assert that the trial court erred in failing to find Hebert had a contractual duty to the plaintiffs and in failing to find Hebert voluntarily assumed a duty to the plaintiffs. Hebert asserts that summary judgment was proper because there is no privity of contract between himself and the subcontractors.
In Standard Roofing Co. of New Orleans v. Elliot Const., 535 So.2d 870 (La. App. 1 Cir.1988), writs denied, 537 So.2d 1166, 1167, reconsid. denied, 539 So.2d 627 (La.1989), the First Circuit recognized an action in negligence by a subcontractor against a project architect with whom there was no privity. See also Calandro Development, Inc. v. R.M. Butler Contr., Inc., 249 So.2d 254 (La.App. 1 Cir.1971). The Fourth Circuit also recognizes a cause of action in negligence against an architect by a subcontractor not in privity with him. S.K. Whitty & Co., Inc. v. Laurence L. Lambert & Associates, 576 So.2d 599 (La. App. 4 Cir.1991), writ denied, 580 So.2d 928 (La.1991); Gurtler, Hebert & Co. v. Weyland Mach. Shop, 405 So.2d 660 (La. *897 App. 4 Cir.1981), writ denied, 410 So.2d 1130 (La.1982). In Gurtler, the court considered whether a sub-contractor had a cause of action against an architect with whom the sub-contractor had no privity of contract, and held a delictual cause of action exists:
Where the damage sued for is the defectively performed work itself, the action is strictly a contractural one and only those who are in privity with the contractor have an action against him. However, where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.
Gurtler, Hebert & Co., 405 So.2d at 662 (quoting Lumber Products, Inc. v. Hiriart, 255 So.2d 783 (La.App. 4 Cir.1971)).
Therefore, an architect's duty to a subcontractor who is not privy to the contract is similar to that owed by other professionals such as attorneys and physicians, i.e., one of professional care and skill customarily employed by other architects in the same general area.
In opposition to Hebert's motion for summary judgment, Young and Sanchez submitted the affidavit of architect and contractor Louis Henslie Faxon. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. In his affidavit, Faxon, a licensed architect, residential contractor and general contractor, opined that as of August 12, 1993, the standard of care applicable to architects required "of an architect the duty to request any and all reports concerning the existence of hazardous materials (including lead, asbestos, etc.) and, in the absence of any such reports or test results, the architect had a duty to request that such test be done by the owner per AIA B141, Art. 4.6.1 and Article 4.9." He stated that this is so, especially since Hebert was renovating an old building; therefore, he breached the standard of care applicable to architects.
Furthermore, by affidavit, Chief Cazes testified that, during the renovation, he asked the architect if, upon occupation of the building, there was any danger from lead paint to employees of the Police Department. Although these inquiries were solely addressed to the safety of police employee personnel, they were sufficient to apprise Hebert of the possible presence of lead-based paint on the premises. In his affidavit, Gary Hebert admitted that, during the course of construction, he received several phone calls from Chief Cazes inquiring as to whether there was any risk to employees of the police department being exposed to lead poisoning in the building after occupancy by the police department.
Considering the foregoing, the trial court erred in concluding that Hebert owed no duty to the plaintiffs, and in granting summary judgment in favor of Hebert.

DECREE
For the foregoing reasons, the grant of summary judgment in favor of Comeaux Brothers is affirmed, and the grant of summary judgment in favor of Gary Hebert, Jr. and against Thomas Wayne Young and Randy Joseph Sanchez is reversed. We remand the matter for further proceedings. Costs are assessed equally against the appellants and Gary Hebert, Jr.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Michael Garvin did not appeal the trial court's judgment and is, therefore, not a party to this appeal.
[2] Subsequently, the trial court granted summary judgment in favor of the City of Plaquemine. That judgment is the subject of Young and Sanchez v. City of Plaquemine et al., 2002 CA 0280 (La.App. 1 Cir. 5/10/2002), 818 So.2d 898, also rendered this day.
[3] Former LSA-C.C. art. 2315.3, which became effective on September 4, 1984 and which was in effect at the time of the alleged injuries in 1995, provided, in pertinent part:

In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
[4] LSA-R.S. 23:1032 provides, in part:

A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
. . . .
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.